UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CURWOOD PRICE,

               Plaintiff,                                  Hon. Janet T. Neff

v.                                            Case No. 1:10-CV-374

DUNCAN HOWARD, et al.,

               Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion to Dismiss. (Dkt. #116). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted**.


## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (Dkt. #1). In 2002, Plaintiff was diagnosed with Reiter's Syndrome[1] which "lead to the slow mastication of Plaintiff's bladder muscle." As a result, Plaintiff suffers from incontinence and must wear "incontinence pads." In "mid to late 2003," Plaintiff was assaulted[2] with a "lock-in-a-sock" necessitating seven stitches in his forehead. Following his August 11, 2005 transfer to the Muskegon Correctional Facility (MCF), Plaintiff was assaulted with a broom handle.[3]

---

[1] Reiter's Syndrome is a form of arthritis that "commonly involves the joints of the spine and sacroiliac joints." *See* Reiter's Syndrome, available at http://www.orthop.washington.edu/PatientCare/OurServices/Arthritis/Articles/ReitersSyndrome.aspx (last visited on June 22, 2011). The "majority" of people with this disorder "maintain a near-normal lifestyle with modest adaptations to protect the involved joints." *Id.*

[2] Plaintiff has failed to allege who committed this assault.

[3] Plaintiff has failed to allege who committed this assault or the date on which it occurred.

On October 15, 2008, Plaintiff suffered an uveitis[4] infection in his left eye.  Dr. Doug Totten prescribed three different medications to treat this infection.  However, Defendants Dawn VanDyke and Mary Hubble "took it upon themselves to deny/cancel" two of these prescriptions "because of the grievances and litigation the Plaintiff had filed."  Dr. Totten later told Plaintiff that he "had never been contacted by any of the Medical Staff of MCF concerning the Plaintiff's current Uveitis infection."  On February 2, 2009, Plaintiff was examined at the Shoreline Vision Center where he was informed that "he would never regain his vision in his left eye. . .because the uveitis had not been properly treated" as Dr. Totten recommended.

On December 8, 2009, Plaintiff was transferred to the Newberry Correction Facility for unspecified retaliatory reasons.  On December 12, 2009, Plaintiff was assaulted[5] suffering a concussion and "blown right pupil."  On February 1, 2010, Plaintiff was transferred to the Ojibway Correctional Facility for unspecified retaliatory reasons.  On February 3, 2010, Plaintiff was transferred back to the Newberry Correctional Facility.  On February 11, 2010, Plaintiff was stabbed in the neck and face.[6]  On or about February 24, 2010, Plaintiff was transferred to the Parnall Correctional Facility for unspecified retaliatory reasons.

Plaintiff initiated this action on March 25, 2010, against Duncan Howard, Laura Heinritz. Mary Hubble, Dawn VanDyke, Laura Olson, David Kihm, Prison Health Services, and an unidentified John Doe.  Plaintiff alleges that Defendants Hubble and VanDyke violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide him with the medications prescribed

---

[4]  Uveitis refers to inflammation of the uvea, the vascular layer of the eye sandwiched between the retina and the white of the eye.  *See* Uveitis, available at http://www.mayoclinic.com/health/uveitis/DS00677 (last visited on June 22, 2011).

[5]  Plaintiff has failed to allege who committed this assault.

[6]  Plaintiff has failed to allege who committed this assault.

by Dr. Totten.  Plaintiff alleges that Defendants Howard, Doe, Heinritz, Olson, and Kihm failed to protect Plaintiff from "violence at the hands of other prisoners" in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  Plaintiff alleges that "all" Defendants unlawfully "subject[ed] the Plaintiff to retaliatory transfers."   Finally, Plaintiff alleges that "all" Defendants "conspire[d] against the Plaintiff for exercising his statutory and constitutionally protected rights." Plaintiff seeks thirty-two million dollars ($32,000,000.00) in damages, as well as declaratory and injunctive relief.  Defendants now move to dismiss certain of Plaintiff's claims on statute of limitations and exhaustion grounds.

## ANALYSIS

### I.        Statute of Limitations

As noted above, Plaintiff initiated this action on March 25, 2010.  Defendants assert that any claims alleges in Plaintiff's complaint which accrued prior to March 25, 2007, must be dismissed on statute of limitations grounds.

When determining the limitations period applicable in a § 1983 action, courts must borrow the statue of limitations which governs personal injury actions in the state in which the § 1983 action was initiated.  *See Owens v. Okure*, 488 U.S. 235, 239-41 (1989); *Bonner v. Perry*, 564 F.3d 424, 430 (6th Cir. 2009).  Where the relevant state law provides multiple statutes of limitation for personal injury actions, courts are to apply the "general or residual statute for personal injury actions."  *Okure*, 488 U.S. at 249-50; *Bonner*, 564 F.3d at 430.  Michigan law articulates multiple statutes of limitation applicable to personal injury actions.  *See* Mich. Comp. Laws § 600.5805.  Accordingly, the limitations period applicable in the present action is three years, as articulated in Mich. Comp. Laws §

600.5805(10).  *See Hardin v. Straub*, 490 U.S. 536, 540 (1989); *Jones v. City of Hamtramck*, 905 F.2d

908, 909 (6th Cir. 1990); *Jones v. City of Allen Park*, 167 Fed. Appx. 398, 407 (6th Cir., Jan. 3, 2006).[7]

　　　　While the Court looks to state law to identify the applicable statute of limitations, federal

law must be applied when determining when the relevant limitations period begins to run.  *See Sharpe*

*v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003); *Hebron v. Shelby County Government*, 406 Fed. Appx.

28, 30 (6th Cir., Dec. 22, 2010).  Under federal law, the statute of limitations begins to run "when

plaintiffs knew or should have known of the injury which forms the basis of their claims."  *Ruff v.*

*Runyon*, 258 F.3d 498, 500 (6th Cir. 2001); *Ohio Midland, Inc. v. Ohio Dept. of Transp.*, 286 Fed. Appx.

905, 911 (6th Cir., July 1, 2008).  A plaintiff has reason to know of his injury when he "should have

discovered it through the exercise of reasonable diligence."  *Dotson v. Lane*, 360 Fed. Appx. 617, 619

n.2 (6th Cir., Jan. 5, 2010) (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)).

　　　　The Court agrees with Defendant that the statute of limitations applicable to Plaintiff's

claims is three years.  However, the Court concludes that the relevant date for determining compliance

with the statute of limitations is not March 25, 2010, the date Plaintiff's complaint was received by the

Court, but rather March 18, 2010, the date Plaintiff signed his complaint.  Under the mailbox rule,

Plaintiff's complaint "is deemed filed when it is handed over to prison officials for mailing to the court."

*Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008).  Moreover, "absent contrary evidence," a prisoner

is deemed to have provided the complaint to prison officials for mailing "on the date he or she signed

the complaint."  *Id.*  Defendants have submitted no evidence to overcome the presumption that Plaintiff

submitted his complaint for mailing on March 18, 2010.  Accordingly, any claims alleged in Plaintiff's

---

[7] The *Hardin* and *City of Hamtramck* courts identified the relevant provision as Mich. Comp. Laws § 600.5805(8).  This particular provision is presently codified at Mich. Comp. Laws § 600.5805(10).

complaint that accrued prior to March 18, 2007, must be dismissed for failure to comply with the statute of limitations.

In his complaint, Plaintiff alleges that he was assaulted with a "lock-in-a-sock" in 2003. Plaintiff also alleges that following his August 11, 2005 transfer to the Muskegon Correctional Facility, he was assaulted with a broom handle. These allegations relate to Plaintiff's failure to protect claims. Any claims arising from these particular incidents, however, are time barred. In response to the present motion, Plaintiff asserts that any allegations in his complaint concerning events prior to October 15, 2008, "were for the sole purpose of providing the Court with BACKGROUND information." (Dkt. #157). Accordingly, the undersigned recommends that Plaintiff's failure to protect claims asserted against Defendants Howard, Doe, Heinritz, Olson, and Kihm (arising from the 2003 and August 11, 2005 incidents described above) be dismissed for failure to comply with the relevant statute of limitations.

## II.        Exhaustion

Defendants Olson and Kihm assert that they are entitled to relief because Plaintiff has failed to properly exhaust any of the claims asserted against them.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.*

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof  faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d

at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus.  *See Woodford,* 548 U.S. at 88.  In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999).  To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies."  *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default."  *Woodford,* 548 U.S. at 92.  To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state

court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007) articulates the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P-Q. The policy provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the

issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R.  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶¶ W-X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due.  *Id.* at ¶ BB.  The respondent at Step II is designated by policy, e.g., the regional health administrator for grievances concerning health care issues.  *Id.* at ¶ DD.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III.  *Id.* at ¶ FF.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances.  *Id.* at ¶ GG.  The total grievance process from the filing of the Step I grievance to providing a response at Step III "shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." *Id.* at ¶ S.

Defendants, who bear the burden of demonstrating that Plaintiff has failed to properly exhaust the claims in question, have submitted evidence concerning two grievances Plaintiff filed with prison officials, as well as an affidavit executed by a Michigan Department of Corrections official.  Plaintiff, in pleadings unrelated to the present motion, has submitted evidence concerning two additional grievances he submitted.  As previously noted, Plaintiff alleges that Defendants Olson and Kihm: (1) failed to protect Plaintiff from "violence at the hands of other prisoners;" (2) subjected Plaintiff to retaliatory transfers; and (3) conspired against Plaintiff for exercising his rights.

A.    Grievance MCF 08-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d

Plaintiff initiated this grievance on December 11, 2008, against "Ms. M. Hubble" (presumably Defendant Hubble). (Dkt. #117, Exhibit C).  In this grievance, Plaintiff alleged that Hubble failed to provide him with all the medications prescribed by his eye doctor.  Plaintiff pursued this grievance through all three steps of the grievance process.  While this grievance was pursued through all three steps of the grievance process, the subject matter of this particular grievance does not concern the claims Plaintiff has asserted against Defendants Olson and Kihm.  Thus, this grievance does not exhaust any of Plaintiff's claims against Defendants Olson and Kihm.

B.    Grievance NCF 10-01-00148-012d

Plaintiff initiated this grievance on January 13, 2010, against "staff of the MDOC and PHS," including Defendants Olson and Kihm.  (Dkt. #117, Exhibit F).  In this grievance, Plaintiff alleges that as a result of his medical condition, he "leak[s]. . .bloody [and] foul smelling" urine. Plaintiff asserts that as a result he must be housed in a single person cell to prevent angering other prisoners.  Plaintiff asserts that on December 6, 2009, he was transferred to the Newberry Correctional Facility where he was "subject to an extreme increased risk of severe assault by other prisoners."  While not clearly stated, the basis of Plaintiff's grievance appears to be that prison officials refused his requests to be housed in a single person cell following his transfer to Newberry.

Plaintiff's Step I grievance was denied and returned to Plaintiff on January 27, 2010.  On February 15, 2010, Plaintiff submitted a Step II grievance appeal.  (Dkt. #117, Exhibit G).  After failing to receive a response to his Step II grievance, Plaintiff submitted a Step III grievance appeal.  The record does not indicate the date on which Plaintiff submitted his Step III grievance, but judging from the text

of Plaintiff's grievance it was submitted sometime after March 9, 2010.  This grievance was returned to Plaintiff on March 15, 2010, for: (1) failure to first complete Step II of the grievance process, and (2) failure to attach to his Step III grievance a copy of the Step I grievance form, a requirement clearly articulated on the Step II/III grievance form.  (Dkt. #117, Exhibits C and I).

The relevant MDOC Policy Directive provides that a prisoner may file a Step III grievance if he "is dissatisfied with the Step II response or does not receive a timely response." Michigan Department of Corrections Policy Directive 03.02.130 ¶ FF.  The Grievance Coordinator is required to respond to a Step II grievance "within 15 days after receipt of the grievance, unless an extension is granted."  *Id.* at ¶ CC.  There is no evidence in the record indicating the date on which Plaintiff's Step II grievance was received by prison officials nor is there any evidence in the record suggesting that the Grievance Coordinator obtained an extension of time to respond to Plaintiff's Step II grievance.  It is difficult, therefore, to determine the date by which the Grievance Coordinator was required to respond to Plaintiff's Step II grievance.  In the text of his Step III grievance, Plaintiff indicates that he did not file his Step III appeal until the deadline to respond to his Step II grievance had passed.  Assuming such is accurate, rejecting Plaintiff's Step III grievance on the ground that he had failed to first complete Step II of the grievance process would appear questionable.  However, such does not call into question the rejection of Plaintiff's Step III grievance for failure to attach thereto a copy of the Step I grievance.  Plaintiff offers no evidence calling into question the assertion by Defendants that Plaintiff failed to comply with this requirement.[8]

---

[8] Plaintiff has submitted two affidavits in response to the present motion.  (Dkt. #157-58).  Regarding this particular matter, these affidavits contain no specific factual allegations only the conclusion that Plaintiff properly exhausted the grievance in question.  Such conclusory statements are insufficient to counter Defendants' factual evidence that Plaintiff failed to comply with this particular procedural requirement.

Defendants assert that after Plaintiff's grievance was returned to him on March 15, 2010, for failure to comply with the aforementioned procedural requirements, Plaintiff failed to properly re-submit his Step III appeal.  In support of this assertion, they have submitted an affidavit executed by Richard Russell, Acting Manager in the Grievance and Appeals Section of the Michigan Department of Corrections.  (Dkt. #119).  In his affidavit, Russell asserts that he "reviewed [Plaintiff's] MDOC Prisoner Step III Grievance Report" and "found no Step III appeal filed" for the grievance in question. Plaintiff offers no evidence to the contrary.  The Court concludes, therefore, that Defendants have satisfied their burden that Plaintiff failed to properly pursue this particular grievance through all three steps of the grievance process.

C.     Grievance NCF 10-02-00324-024z

Attached to Plaintiff's complaint is a copy of a Step I grievance that Plaintiff submitted on or about February 8, 2010.  (Dkt. #1, Exhibit L).  The text of this grievance is unreadable.  Moreover, there is no indication in Plaintiff's complaint or elsewhere that Plaintiff pursued this particular grievance through all three steps of the grievance process.  Plaintiff has likewise submitted no evidence that he pursued this grievance through all three steps of the grievance process.  On the other hand, Defendants have submitted evidence that Plaintiff did not pursue this matter through Step III of the grievance process.  (Dkt. #119).  The Court concludes, therefore, that Defendants have satisfied their burden that Plaintiff failed to properly pursue this particular grievance through all three steps of the grievance process.

D.      Grievance LCF 2010-10-2016-12z3

Plaintiff submitted this grievance on September 27, 2010, alleging that "health care" was failing to properly treat his medical condition.  (Dkt. #127, Exhibit A).  There is no indication that this grievance was asserted against Defendant Olson or Defendant Kihm.  Moreover, Plaintiff has failed to submit evidence that he pursued this grievance through all three steps of the grievance process.  Defendants have, however, submitted evidence that Plaintiff did not pursue this matter through Step III of the grievance process.  (Dkt. #119).  The Court concludes, therefore, that Defendants Olson and Kihm have satisfied their burden that this grievance does not exhaust any of the claims asserted against them and, furthermore, that Plaintiff failed to properly pursue this particular grievance through all three steps of the grievance process.

Plaintiff offers no evidence that he has submitted or pursued any other grievances in addition to the four discussed above.  In his affidavit, Richard Russell asserts that Plaintiff "has not filed any Step III appeals since May 2009."  (Dkt. #119).  Plaintiff offers no evidence to the contrary.  As previously discussed, Plaintiff's failure to protect claims must be dismissed on statute of limitation grounds.  Plaintiff's retaliation and conspiracy claims asserted against Defendants Olson and Kihm concern events allegedly occurring after May 2009.  Accordingly, for the reasons discussed herein, the undersigned concludes that Defendants Olson and Kihm have carried their burden to establish that Plaintiff has failed to properly exhaust his retaliation and conspiracy claims.  The undersigned recommends, therefore, that Plaintiff's retaliation and conspiracy claims against Defendants Olson and Kihm be dismissed without prejudice for failure to properly exhaust administrative remedies.

III.        **Allegations which Fail to State a Claim**

Plaintiff has been permitted to proceed as a pauper in this matter.  Pursuant to federal law, "[n]otwithstanding any filing fee, or portion thereof, that may have been paid" by a litigant pauper, "the court *shall* dismiss the case *at any time* if the court determines that. . .the action. . .fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

As the Supreme Court subsequently clarified, to satisfy this Rule a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*  As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the

wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 1949-50 (internal citations omitted).

A.    Defendant Duncan Howard

Plaintiff's complaint contains no *factual* allegations against Defendant Howard that satisfy the above standard. The only factual allegations in Plaintiff's complaint concerning Howard are that he is employed as the "Health Care Administrator for the Michigan Department of Corrections." Plaintiff also asserts that on an unspecified date he wrote a letter to Howard. Plaintiff offers no allegations concerning the contents of this communication. These allegations, even if assumed to be true, would not entitle Plaintiff to relief. While Plaintiff also asserts in his complaint the legal conclusion that Defendant Howard violated his constitutional rights, such conclusions likewise fail to state a claim on which relief may be granted. Accordingly, the undersigned recommends that Plaintiff's claims against Defendant Howard be dismissed for failure to state a claim on which relief may be granted.

B.    Defendant Laura Heinritz

Plaintiff's complaint contains no *factual* allegations against Defendant Heinritz that satisfy the above standard. The only factual allegations in Plaintiff's complaint concerning Heinritz are that she is employed as the "Michigan Department of Corrections Transfer Coordinator." Plaintiff also alleges that on October 2, 2009, Heinritz wrote a letter to Plaintiff's counsel indicating that any transfer orders concerning Plaintiff "will be reviewed by [her] office." Finally, Plaintiff asserts that on an

-16-

unspecified date he wrote a letter to Heinritz.  Plaintiff offers no allegations concerning the contents of this communication.  These allegations, even if assumed to be true, would not entitle Plaintiff to relief. While Plaintiff also asserts in his complaint the legal conclusion that Defendant Heinritz violated his constitutional rights, such conclusions likewise fail to state a claim on which relief may be granted. Accordingly, the undersigned recommends that Plaintiff's claims against Defendant Heinritz be dismissed for failure to state a claim on which relief may be granted.

C.     Plaintiff's Conspiracy Claims

In his Fourth Cause of Action, Plaintiff asserts that "all" Defendants conspired against him "for exercising his. . .protected rights," in violation of 42 U.S.C. §§ 1985, 1986.  To state a claim under 42 U.S.C. § 1985, Plaintiff must allege: (1) a conspiracy, (2) for the purpose of depriving any person of the equal protection of the laws, (3) an act in furtherance of the conspiracy, and (4) whereby a person is either injured or deprived of any right or privilege of a citizen of the United States.  *See Thurmond v. County of Wayne*, 2011 WL 2270901 at *6 (6th Cir., June 10, 2011).  While Plaintiff has alleged facts sufficient to satisfy the fourth element, Plaintiff's complaint contains no factual allegations concerning the first three elements of this offense.  Thus, Plaintiff's allegations fail to state a claim under § 1985.

Section 1986 creates a cause of action against anyone "having knowledge that any of the wrongs conspired to be done [as described in § 1985] and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so."  *Id.*  Because Plaintiff has failed to state a claim under § 1985, his § 1986 claim must also be dismissed.  *Id.* ("[d]ismissal of a § 1986 claim is proper if a plaintiff fails to state a cause of action under § 1985").  The undersigned recommends,

therefore, that the conspiracy claims articulated in the Fourth Cause of Action in Plaintiff's Complaint be dismissed for failure to state a claim on which relief may be granted.

>           D.      Defendant Prison Health Services

>       In his complaint, Plaintiff articulates four causes of action.  The first and second causes of action are expressly asserted against individual defendants and not Prison Health Services (PHS). The third and fourth causes of action, however, are asserted against "all" Defendants.  As discussed, Plaintiff's fourth cause of action fails to state a claim on which relief may be granted.  In his third cause of action, Plaintiff alleges that PHS unlawfully "subject[ed] the Plaintiff to retaliatory transfers."

>       PHS is not vicariously liable for the actions of its employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)); *Street v. Corr. Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996); *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001).  To establish liability against PHS, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a PHS policy, practice, or custom.  *See Thomas*, 398 F.3d at 429.

>       To establish the existence of a policy, practice, or custom, Plaintiff must demonstrate the following: (1) the existence of a "clear and persistent pattern" of illegal activity; (2) that PHS had notice or constructive notice of such; (3) that PHS tacitly approved of the illegal activity, such that "their deliberate indifference in their failure to act can be said to amount to an official policy of inaction" and (4) that the policy, practice, or custom in question was the "moving force" or "direct causal link" in the

constitutional deprivation.  *Id.* at 429 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)).

Plaintiff's complaint contains no factual allegations that, even if accepted as true, would entitle him to prevail on a claim against PHS.  Therefore, the undersigned recommends that Plaintiff's claims against PHS be dismissed for failure to state a claim on which relief may be granted.

## IV.        Defendant John Doe

Plaintiff initiated this action on March 25, 2010, against numerous defendants including an unidentified John Doe.  On May 19, 2010, the Honorable Janet T. Neff ordered that service be effected on various defendants.  (Dkt. #14).  Judge Neff noted, however, that "[t]he Court lacks sufficient information at this time to order service on the Defendant named as 'John Doe, MDOC Transfer Coordinator.'"  *Id.*  In the more than one year since this Order issued, Plaintiff has made no attempt to inform the Court of the identity of "John Doe" or seek the Court's assistance in learning of this individual's identity.  Thus, service has yet to be effected on this particular defendant.

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served with a copy of the complaint."  The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  If the plaintiff demonstrates good cause for such failure, however, "the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m); *see also*, *Bush v. City of Zeeland*, 2003 WL 22097837 at *2 (6th Cir., Sep. 5, 2003) (citation omitted).  Considering Plaintiff's

lack of diligence, the Court recommends that Plaintiff's claims against John Doe be dismissed without prejudice for failure to timely effect service.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion to Dismiss, (dkt. #116), be **granted**. Specifically, the undersigned recommends that: (1) Plaintiff's failure to protect claims asserted against Defendants Howard, Doe, Heinritz, Olson, and Kihm (arising from the 2003 and August 11, 2005 incidents described above) be dismissed for failure to comply with the relevant statute of limitations; and (2) Plaintiff's retaliation and conspiracy claims against Defendant Olson and Defendant Kihm be dismissed without prejudice for failure to properly exhaust administrative remedies.

The undersigned further recommends that Plaintiff's claims against Defendants Howard, Heinritz, and Prison Health Services be dismissed for failure to state a claim on which relief may be granted. The undersigned recommends that Plaintiff's remaining conspiracy claims (articulated in his Fourth Cause of Action) be dismissed for failure to state a claim on which relief may be granted. Finally, the undersigned recommends that Plaintiff's claims against John Doe be dismissed without prejudice for failure to timely effect service.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  August 11, 2011                           /s/ Ellen S. Carmody
                                                  ELLEN S. CARMODY
                                                  United States Magistrate Judge