UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CURWOOD PRICE,

        Plaintiff,                                Hon. Janet T. Neff

v.                                                   Case No. 1:10-CV-374

DUNCAN HOWARD, et al.,

        Defendants.
_____/

### REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>. (Dkt. #161). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part, denied in part, and dismissed as moot in part**.

### BACKGROUND

The following allegations are contained in Plaintiff's complaint. (Dkt. #1). In 2002, Plaintiff was diagnosed with Reiter's Syndrome[1] which "lead to the slow mastication of Plaintiff's bladder muscle." As a result, Plaintiff suffers from incontinence and must wear "incontinence pads." In "mid to late 2003," Plaintiff was assaulted[2] with a "lock-in-a-sock" necessitating seven stitches in his

---

[1] Reiter's Syndrome is a form of arthritis that "commonly involves the joints of the spine and sacroiliac joints." *See* Reiter's Syndrome, available at http://www.orthop.washington.edu/PatientCare/OurServices/Arthritis/Articles/ReitersSyndrome.aspx (last visited on December 6, 2011). The "majority" of people with this disorder "maintain a near-normal lifestyle with modest adaptations to protect the involved joints." *Id.*

[2] Plaintiff has failed to allege who committed this assault.

forehead. Following his August 11, 2005 transfer to the Muskegon Correctional Facility (MCF), Plaintiff was assaulted with a broom handle.[3]

On October 15, 2008, Plaintiff suffered an uveitis[4] infection in his left eye. Dr. Doug Totten prescribed three different medications to treat this infection. However, Defendants Dawn VanDyke and Mary Hubble "took it upon themselves to deny/cancel" two of these prescriptions. Dr. Totten later told Plaintiff that he "had never been contacted by any of the Medical Staff of MCF concerning the Plaintiff's current Uveitis infection." On February 2, 2009, Plaintiff was examined at the Shoreline Vision Center where he was informed that "he would never regain his vision in his left eye. . .because the uveitis had not been properly treated" as Dr. Totten recommended.

On December 8, 2009, Plaintiff was transferred to the Newberry Correction Facility for unspecified retaliatory reasons. On December 12, 2009, Plaintiff was assaulted[5] suffering a concussion and "blown right pupil." On February 1, 2010, Plaintiff was transferred to the Ojibway Correctional Facility for unspecified retaliatory reasons. On February 3, 2010, Plaintiff was transferred back to the Newberry Correctional Facility. On February 11, 2010, Plaintiff was stabbed in the neck and face.[6] On or about February 24, 2010, Plaintiff was transferred to the Parnall Correctional Facility for unspecified retaliatory reasons.

Plaintiff initiated this action on March 25, 2010, against Duncan Howard, Laura Heinritz. Mary Hubble, Dawn VanDyke, Laura Olson, David Kihm, Prison Health Services, and an unidentified

---

[3] Plaintiff has failed to allege who committed this assault or the date on which it occurred.

[4] Uveitis refers to inflammation of the uvea, the vascular layer of the eye sandwiched between the retina and the white of the eye. *See* Uveitis, available at http://www.mayoclinic.com/health/uveitis/DS00677 (last visited on December 6, 2011).

[5] Plaintiff has failed to allege who committed this assault.

[6] Plaintiff has failed to allege who committed this assault.

John Doe.  Plaintiff alleges that Defendants Hubble and VanDyke violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide him with the medications prescribed by Dr. Totten.  Plaintiff alleges that Defendants Howard, Doe, Heinritz, Olson, and Kihm failed to protect him from "violence at the hands of other prisoners" in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  Plaintiff alleges that "all" Defendants unlawfully "subject[ed] the Plaintiff to retaliatory transfers."  Finally, Plaintiff alleges that "all" Defendants "conspire[d] against the Plaintiff for exercising his statutory and constitutionally protected rights."[7]  Plaintiff seeks thirty-two million dollars ($32,000,000.00) in damages, as well as declaratory and injunctive relief.  Defendants Howard, Heinritz, Hubbell, and VanDyke now move for summary judgment.

## ANALYSIS

**I.       Defendants Howard and Heinritz**

Defendants Howard and Heinritz move for summary judgment.  However, Plaintiff's claims against these two defendants have since been dismissed.  (Dkt. #173, 189).  Accordingly, the undersigned recommends that Defendant Howard's and Defendant Heinritz's motions for summary judgment be dismissed as moot.

---

[7] Plaintiff's conspiracy claims have since been dismissed.  (Dkt. #173, 189).

**II.        Retaliation Claims**

Plaintiff asserts in his complaint that "all" defendants subjected him to unlawful "retaliatory transfers and placement. . .due to his Jewish religious beliefs and practices." Plaintiff has been permitted to proceed as a pauper in this matter. Pursuant to federal law, "[n]otwithstanding any filing fee, or portion thereof, that may have been paid" by a litigant pauper, "the court *shall* dismiss the case *at any time* if the court determines that. . .the action. . .fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

As the Supreme Court subsequently clarified, to satisfy this Rule a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim

>for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 1949-50 (internal citations omitted).

While Plaintiff asserts in his complaint the legal conclusion that Defendants Hubble and VanDyke subjected him to unlawful retaliation, his complaint contains no *factual* allegations against Hubble or VanDyke that satisfy the above standard. Accordingly, the undersigned recommends that Plaintiff's retaliation claims against Defendants Hubble and VanDyke be dismissed for failure to state a claim on which relief may be granted.

**III.      Eighth Amendment Claims**

In his complaint, Plaintiff asserts that on or about October 15, 2008, Dr. Totten prescribed three different medications to treat his uveitis infection. Plaintiff claims that Defendants VanDyke and Hubble "took it upon themselves to deny/cancel" two of these prescriptions. Specifically, Plaintiff asserts that Defendants VanDyke and Hubble cancelled or refused to fill his prescriptions for Homoatropine and Benadryl. Plaintiff asserts that he was later informed that "he would never regain his vision in his left eye. . .because the uveitis had not been properly treated." Defendants VanDyke and Hubble move for summary judgment as to these claims.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v.*

*Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that the plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, the defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*,

2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

In support of their motions for summary judgment, Defendants VanDyke and Hubble have each submitted affidavits. Before discussing the contents of these affidavits, the Court must first comment on certain other evidence submitted by Defendants. In support of their motion for summary judgment, Defendants Hubble and VanDyke also rely on what they purport are copies of portions of Plaintiff's medical records. (Dkt. #162, Exhibits C-E). These documents, however, have not been properly authenticated. As is well recognized, "only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Rogers v. Lilly*, 292 Fed. Appx. 423, 428 n.3 (6th Cir., Aug. 22, 2008) (quoting *Smoot v. United Transp. Union*, 246 F.3d 633, 649 (6th Cir. 2001)); *see also*, Fed. R. Evid. 901(a). Because the medical records in question have not been properly authenticated, the Court is precluded from considering them in resolving the present motion. *See, e.g., Brooks v. Haggett*, 2009 WL 688855 at *3 (N.D.Cal., Mar. 16, 2009) (unauthenticated medical records may not be considered in connection with a motion for summary judgment).

      A.     Defendant VanDyke

In her affidavit, Defendant VanDyke asserts the following. (Dkt. #162, Exhibit W). At the time in question, VanDyke was employed as a pharmacy assistant. One of her duties was "to make

sure that medication orders were filled" by the MDOC's "offsite pharmacy supplier." Prescriptions for "a non-formulary medication," however, required pre-approval by the "Regional Medical Director." According to VanDyke, Benadryl is a non-formulary medication. After receiving the request from Dr. Totten that Plaintiff be provided Benadryl, VanDyke "spoke with" Dr. Totten "to let him know that the Benadryl [prescription] needed to get approval from the [Regional Medical Director] because it was non-formulary."

VanDyke also asserts that "[o]nce the doctor is notified that a medication that he ordered needs approval, that is all I can do" because "I am a pharmacy assistant and cannot order medications for inmates." While not expressly stated, the clear implication of these particular assertions is that when a doctor prescribes a non-formulary medication VanDyke's role is limited to notifying the prescribing doctor who is responsible for obtaining the necessary approval from the Regional Medical Director if such has not already been obtained.

Plaintiff counters, in the verified portion of his complaint as well as in a separate affidavit, that Dr. Totten informed him that he was never contacted by any of the prison staff concerning Plaintiff's uveitis infection. (Dkt. #1, 178). Plaintiff further asserts that he never received the prescriptions in question. Plaintiff does not challenge VanDyke's assertion that she is not authorized to approve or reject prescriptions ordered by physicians. Plaintiff's claim is not based on an assertion that VanDyke possessed authority beyond that identified by VanDyke in her affidavit. Plaintiff likewise does not challenge VanDyke's assertion that the only action she could take in this matter was to inform Dr. Totter that he needed to contact the Regional Medical Director to obtain approval for Plaintiff's Benadryl prescription. Instead, Plaintiff asserts that Defendant VanDyke failed to do the one and only

thing that VanDyke herself asserts she was responsible for in this matter, contacting Dr. Totter, and that by failing to do so he was denied his Benadryl prescription.

The Court notes that Defendant VanDyke offers no evidence that Dr. Totten was independently aware of the need to obtain approval from the Regional Medical Director for Plaintiff's Benadryl prescription. VanDyke offers no evidence that the doctor obtained or attempted to obtain the necessary approval. Finally, VanDyke offers no evidence that Plaintiff ever received his Benadryl prescription. In light of the evidence thus far submitted, the Court concludes that Defendant VanDyke is not entitled to summary judgment as to Plaintiff's claim that VanDyke acted to deny him the Benadryl prescribed to him by Dr. Totten.

Defendant has submitted no evidence disputing Plaintiff's claim that he was experiencing a serious medical condition. Plaintiff was receiving medical treatment for which the medications in question were prescribed. At the very least, this creates a genuine factual dispute as to whether Plaintiff was experiencing a "serious medical need" sufficient to implicate the Eighth Amendment. As for the subjective element of the analysis, the evidence reveals a genuine factual dispute as to whether VanDyke acted reasonably. While VanDyke asserts she spoke with Dr. Totten regarding the need to obtain pre-approval for the Benadryl prescription, Plaintiff has submitted evidence to the contrary. Accordingly, the undersigned recommends that Defendant VanDyke is not entitled to summary judgment as to Plaintiff's claim that she acted to deny him his Benadryl prescription.

With respect to Plaintiff's claim that Defendant VanDyke acted to prevent him from receiving his Homoatropine prescription, VanDyke offers absolutely no evidence. Defendant VanDyke does not address the matter in her affidavit nor has she submitted evidence that Plaintiff ever received this particular prescription. On the other hand, Plaintiff asserts in the verified portion of his complaint,

as well as in a separate affidavit, that VanDyke acted to deny him his Homoatropine prescription. As previously discussed, Defendant VanDyke concedes that she is responsible for ensuring that inmate prescriptions are properly filled. Accordingly, the undersigned recommends that Defendant VanDyke is not entitled to summary judgment as to this particular claim.

### B. Defendant Hubbell

In her affidavit, Defendant Hubbell asserts that her only involvement in this matter was to interview Plaintiff concerning a grievance he filed after he failed to receive his prescription. (Dkt. #162, Exhibit Y). Plaintiff has offered no evidence to the contrary.

Liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon active unconstitutional behavior. *See Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999). Accordingly, liability in a § 1983 action does not attach based upon allegations that a defendant simply denied a prisoner's grievance or failed to act in response thereto. *See Skinner v. Govorchin*, 463 F.3d 518, 525-26 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lee v. Michigan Parole Board*, 2004 WL 1532563 at *2 (6th Cir., June 23, 2004) ("[s]ection 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act upon information contained in a grievance"); *Alder v. Correctional Medical Services*, 2003 WL 22025373 at *2 (6th Cir., Aug. 27, 2003) ("[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension").

The undersigned, therefore, recommends that Defendant Hubbell's motion for summary judgment be granted.

C.  Plaintiff's Rule 56 Motion

In one of his pleadings, Plaintiff moves the Court, pursuant to Rule 56(d), to stay resolution of Defendants' motion for summary judgment on the ground that he requires certain discovery to properly respond thereto. Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" defer considering the motion, allow time for discovery, or "issue any other appropriate order." The Court finds Plaintiff's request deficient for three reasons.

First, Plaintiff has failed to comply with Rule 56(d)'s express requirement that his request be accompanied by affidavit or declaration. Next, Plaintiff requests a stay so that he can access his own medical records, information to which he has long had access. *See* Mich. Policy Directive 03.04.108 ¶ S. Finally, Plaintiff has failed to indicate how information in his medical records would result in a different outcome of the present motion. Accordingly, the Court recommends that Plaintiff's motion for stay be denied.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (dkt. #161), be **granted in part, denied in part, and dismissed as moot in part**. Specifically, the undersigned recommends that Defendant Howard's and Defendant Heinritz's motions for summary judgment be **dismissed as moot**; Plaintiff's retaliation claims against Defendants Hubble and VanDyke be **dismissed for failure to state a claim**; Defendant VanDyke's motion for summary judgment as to Plaintiff's Eighth Amendment claims be **denied**; Defendant Hubble's motion for summary judgment as to Plaintiff's Eighth Amendment claims be **granted**; and Plaintiff's Rule 56(d)

motion for stay be **denied**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: February 29, 2012        /s/ Ellen S. Carmody
                               ELLEN S. CARMODY
                               United States Magistrate Judge